New trial granted.

[FOURTH DEPARTMENT, GENERAL TERM, at Rochester, March 6, 1871. *Mullin*, P. J., and *Johnson* and *Talcott*, Justices.]

———————◇———————

HARDEN *vs.* BOYCE.

When a war is commenced between nations, it arrests, *eo instanti*, all commercial intercourse and voluntary communication with the enemy, without the permission of the government; and the citizens or subjects of one belligerent become the enemies of the other, and of all its citizens or subjects.

These results of war *inter gentes* were substantially applied to the citizens of the Confederate States, during the late conflict.

In the late rebellion there existed, between the government of the United States, and the Confederate States, a state of civil war, in the sense of inter-

national law, which brought with it the common incidents of war, and ar-
rested all commercial intercourse and communication between the citizens
of those States, respectively.

An indorser's engagement is a conditional one, to be made absolute upon the
observance of such formula as are prescribed by law; unless waived, or
rendered unnecessary by facts and circumstances attending the maturity,
demand and refusal of payment, recognized by commercial law.

Where a promissory note, payable in the city of New York, matured during
the civil war, there being no pretense that notice of dishonor had been
waived, or was unnecessary; it was *held* than an indorser residing in the
State of South Carolina was entitled to notice; but that the holder was un-
der no obligation to send it, as long as the impediment occasioned by war
existed.

That it was his duty, however, to send it when the interruption of intercourse
ceased.

That it was not a sufficient performance of his duty to the indorser to deposit
in the post office at New York, a notice of protest addressed to him at his
residence in Greenville, in the State of South Carolina, on the 4th of Octo-
ber, 1861, when open war prevailed between the government of the United
States and the Confederate States, and there was no longer any actual mail
communication between New York and South Carolina, and all intercourse
or communication between the citizens of those States, respectively, was un-
lawful, and prohibited.

And that the holder, when he deposited such notice, did not put it in such
course of transportation and delivery as would accomptish the duty imposed
on him by law.

That the holder must be held to have known of the existing condition of the
country, and the prohibition of intercourse; and he could not, therefore, cast
upon the government the burden of preserving his letter, or its contents,
until the termination of hostilities.

THE action is against the defendant as indorser of a
promissory note, of which the following is a copy:

" $3802.76.            New York, October 1st, 1860.

Twelve months after date we promise to pay to the
order of ourselves, at the Bank of the Republic, thirty-
eight hundred and two 76-100 dollars, value received.

LANES, BOYCE & Co."

The complaint alleges that the defendant indorsed the
note for value, and delivered it so indorsed, and thereafter,
and before this action, it lawfully came to the possession

Harden *v.* Boyce.

of the plaintiff for value, &c., and "that at maturity said note was duly presented for payment, but was not paid, and was thereupon duly protested for non-payment, of all which due notice was given to the defendant."

The answer admits the making of the note and the indorsement thereof by the defendant, but denies that such indorsement was for value, and alleges that such indorsement was for the accommodation of the makers, and puts in issue the allegations of the complaint as to the presentment, demand of payment and notice of non-payment to him. With the answer was served an affidavit, pursuant to the statute, denying that the defendant had ever received notice of the non-payment of the said note. Upon the trial, the only witness produced was Archibald S. Vanduzer, the notary, who presented the note for payment. He testified, that he was a notary public, and that in his capacity as such notary, on the 4th day of October, 1861, he presented the note in suit at the Bank of the Republic, where the same was made payable, and demanded payment, which was refused ; whereupon he duly protested the same, and deposited in the post office notice to the indorser, the defendant, and prepaid the postage thereon, pursuant to law. It was admitted that at the time of the presentment of the note for payment, and of the depositing in the post office of the notice of protest testified to by the witness, the defendant was a resident of Greenville, in the State of South Carolina, and continued so to be at the time of the trial.

The plaintiff having rested his case, the defendant's counsel moved to dismiss the complaint on several grounds. The court, having stated that the question presented was too important to be decided hastily at circuit, in order to facilitate the presentation of the case to the general term, denied the motion; to which decision the defendant's counsel duly excepted. The jury, under the direction of the court, found a verdict for the plaintiff for $5562.87;

to which direction of the court the defendant's counsel also excepted. The court thereupon directed the exceptions to be heard in the first instance at the general term, and that the entry of judgment be meanwhile suspended.

*R. H. Corbett,* for the plaintiff.

The only question is : Was notice ever sent to the defendant, pursuant to the requirement of our statute ?

I. The notary gave the proper notice; he did all the law required him to do.

II. For the manner of protesting, and notice how to be given, see 3 *R. S.* 71, *&c.,* *5th ed.* *Laws of* 1835, *ch.* 141.

III. The right to serve by mail is extended by *Laws of* 1857, *p.* 839, *ch.* 416. *Laws of* 1835, *p.* 152, *ch.* 141.

*J. Larocque,* for the defendant.

I. The indorser of a promissory note contracts only that the note shall be duly honored, and that if it is not, and he has due notice of the dishonor, he will pay the amount. The holder is bound to exercise due diligence in giving notice to the indorser, if he intends to look to him for payment.

II. The question as to what is due notice, under ordinary circumstances, is now well settled. The result of the authorities is, that in order to charge the indorser, the holder of a note is bound, when there is a communication by mail between the places where the holder and indorser respectively reside, to dispatch the notice of dishonor by mail on the next business day after default is made in payment of it.

III. Delay in giving notice may be excused by certain causes not traceable to the neglect of the holder. Among such excusing causes is the breaking out of a war, blocking up the usual channels of communication, and preventing the transmission of the notice; but such delay is excusable so long only as the preventing cause continues,

Harden *v.* Boyce.

and the holder in such case is bound to give notice as soon as possible after the impediment is removed. *(Edwards on Bills and Notes, pp.* 458, 459, *marg. Chitty on Bills,* 330. *Hopkirk* v. *Page,* 2 *Brock.* 20–34.)

IV. As soon as a war is commenced, all trading, negotiation, communication or intercourse between the citizens of the respective belligerent powers, without the direct permission of government, is unlawful. *(Griswold* v. *Waddington,* 16 *John.* 438, *and cases cited.)*

V. On the 4th day of October, 1861, when, according to the evidence, a notice of the non-payment of the note in suit was deposited in the post office in the city of New York, addressed to the defendant, at his residence, in Greenville, in the State of South Carolina, open war was raging between the government of the United States and the States adhering to the said government on the one side, including the State of New York, and the so-called Confederate government, and the States adhering thereto, including the State of South Carolina, on the other, and there was no longer any actual mail communication between New York and South Carolina. Independently, therefore, of the express prohibition of intercourse by act of congress, to which attention will be hereafter called, all attempts at communication or intercourse between the citizens of the State of New York and citizens of the State of South Carolina, without the express permission of the government, were then unlawful. *(Griswold* v. *Waddington,* 16 *John.* 438. *The Rapid,* 8 *Cranch,* 161. *The Julia, Id.* 193.)

VI. Not only, however, was there then no permission for such intercourse or communication, but such intercourse and communication were then expressly prohibited and declared unlawful by act of congress of the United States, and the proclamation of the President, issued in conformity therewith. *(Act of April* 13, 1861, § 5. 12 *Stat.*

*at Large, p. 257. Proc. of Pres., dated Aug.* 16, 1861. 12 *Stat. at Large, app. No.* 9.)

VII. The deposit, therefore, in the post office at the city of New York, on October 4, 1861, of a notice of the non-payment of the note in suit, addressed to the defendant at Greenville, in the State of South Carolina, was not only a nullity, for the reason that there was then no mail service between the said States, but was an unlawful act under the rules of the common law, and expressly prohibited by the act of congress and proclamation above cited, and of no effect whatever. (*Act in relation to Postal Service,* 12 *U. S. Stat. at Large, p.* 177. *Order of Postm. Gen. of* 30*th May,* 1861.)

VIII. The holder of the note in suit having been prevented from giving to the defendant notice of non-payment, at the time when, under other circumstances, he would have been obliged to give such notice, by the existing hostilities and the prohibitory statute and proclamation cited above, was not thereby relieved from the obligation to give notice with reasonable diligence. The state of facts existing at the time of the maturity of the note, could only excuse delay in giving notice, so long as the preventing cause continued, and did not dispense with the necessity of notice. (*See authorities under third point.*)

IX. By a proclamation of the President, dated June 13, 1865, the restrictions theretofore imposed on intercourse in the territory of the United States east of the Mississippi river, were removed. It was then possible for the holder of the note in suit, and it became his duty, to give notice of non-payment to the defendant, if he intended to hold him on his contract as indorser. No such notice was, however, given, and, by the plaintiff's negligence, the defendant was discharged from all liability as indorser of the said note. (*Hopkirk* v. *Page,* 2 *Brook.* 34.)

X. The defendant was therefore entitled to a dismissal of the complaint, and the court below erred in denying the motion made for a dismissal, at the close of the evidence.

Harden v. Boyce.

XI. The defendant's exceptions to the decision of the court, denying the motion to dismiss, and directing a verdict, were both well taken, and the verdict should therefore be set aside, and a new trial ordered, with costs to the defendant.

*By the Court,* BRADY, J. At the time the notice of dishonor was deposited in the post office in this city, addressed to the defendant, at his residence in Greenville, South Carolina, that State, with others, had seceded from the United States; the federal representatives therein had either succumbed to the rebellious movement, or been supplanted; the political and judicial power of the federal government had been set at defiance, and the insurgents were in actual possession of the territory embraced within the State, by force of arms. The President, under the authority conferred by the act of congress passed July 13, 1861, (12 *Stat. at Large, p.* 257,) had declared that the inhabitants of that State and others were in a state of insurrection against the United States, and had proclaimed that all commercial communication between the citizens of that State and others named, and the citizens of the United States, was unlawful. (*Proclamation, app. No.* 9, 12 *Stat. at Large.*) The government established by the Confederate States was one called by publicists a government *de facto,* but which might, perhaps, be more aptly termed a government of paramount force, the existence of which was maintained by active military power within the territories, and against the rightful authority of an established and lawful government, and to that government, thus created, the rights and obligations of a belligerent were conceded in its military character, soon after the war began. (*Per Ch. J. Chase, in Thorington* v. *Smith and Hartley, decided Dec.* 1868, 8 *Wall.* 1.)

When a war is commenced between nations, it arrests, *eo instanti,* all commercial intercourse and voluntary com-

munication with the enemy, without the permission of the
government; and the citizens or subjects of one belliger-
ent become the enemies of the other, and of all its citizens
or subjects. (*Griswold* v. *Waddington*, 16 *John.* 438, *and
cases cited. The Rapid*, 8 *Cranch*, 161. *The Julia, Id.* 193.)
And these results of war, *inter gentes*, were substantially
applied to the citizens of the Confederate States during the
late conflict. The following cases establish the proposition
that in the late rebellion there existed between the govern-
ment of the United States and the Confederate States, a
state of civil war in the sense of international law, which
brought with it the common incidents of war, and arrested
all commercial intercourse and communication between
the citizens of those States, respectively. (*The Prize Cases*,
2 *Blatch.* 635. *The Venice*, 2 *Wall.* 258. *The Wm. Bagaly*,
5 *id.* 377. *Hanger* v. *Abbott*, 6 *id.* 532. *Allen* v. *Russell*,
12 *Am. Law Reg.* 362. *Billgay* v. *Branch*, 17 *id.* 33. *Cop-
pell* v. *Hall*, 7 *Wall.* 555.) The existence and character of
the hostilities mentioned, and the consequences flowing
therefrom, rendered the attempted service of notice of pro-
test on the defendant a nullity. The defendant's engage-
ment was a conditional one, to be made absolute upon the
observance of such formulæ as are·prescribed by law, un-
less waived or rendered unnecessary by facts and circum-
stances attending the maturity, demand and refusal of
payment recognized by commercial law. In this case,
there was no pretense that notice of dishonor had been
waived, or was necessary; and the defendant was there-
fore entitled to it. The plaintiff was under no obliga-
tion to send it, as long as the impediment occasioned by
war existed. (*Edwards on Bills and Notes*, 458, 459. *Hop-
kirk* v. *Page*, 2 *Brock.* 20, 34.) It may be at least question-
able whether he would be justified, after the President's
proclamation, in thus communicating with an enemy. It
was his duty to send it, however, when the interruption
of intercourse ceased. If, at the time the notice was de-

Harden *v.* Boyce.

posited, the mail communication between the defendant's State and this was continued, it rested with him to show that fact, to overcome the presumption to the contrary, or, as held in the case of *Billgay* v. *Branch*, (*supra*,) to have proven that the general usage required that the letter containing the notice should be preserved by the postmaster until the restoration of intercourse, and then forwarded to its destination. In that case, the notice of dishonor was deposited in the post office at New Orleans, in October, 1863, when that city was in possession of the federal forces, addressed to the defendant, then in a rebel State. By the act of congress passed February 28, 1861, the postmaster-general was authorized to discontinue the postal service on any route where it could not, in his opinion, be safely continued; and we are not going too far in presuming that the mail communication could not be safely carried on while the hostilities between the insurgents and the government of the United States continued, or that communication interdicted by law would not be permitted by the government without its permission. The plaintiff must be held to have known of the existing condition of the country, and the prohibition of intercourse. He could not, therefore, cast upon the government the burden of preserving his letter or its contents until the termination of hostilities; and it follows that when he deposited the notice he did not put it in such course of transportation and delivery as would accomplish the duty imposed on him by law. The verdict must, for these reasons, be set aside, and a new trial granted, costs to abide the event.

[NEW YORK GENERAL TERM, January 3, 1870. *Ingraham, Geo. G. Barnard* and *Brady*, Justices.]